UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFERY JONES,

    Plaintiff,

v.                                            Case No. 3:21cv512-RV-HTC

SECRETARY MARK INCH,
et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

On March 23, 2021, Defendants Maiorana, Scott, Overholt, Molesky, and Inch removed this case from the Second Judicial Circuit of Leon County pursuant to 28 U.S.C. §§1331, 1343, 1367, 1441(a), 1446 and Local Rule 7.2. ECF Doc. 1. The matter is now before the Court on Defendant Inch's Motion to Dismiss (ECF Doc. 1-15), which was filed prior to removal, and Defendants' Maiorana, Scott, Overholt and Molesky's Amended Motion to Dismiss (ECF Doc. 6). Plaintiff was given an opportunity to respond and failed to do so. ECF Doc. 7.

Defendants' motions were referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon consideration, the undersigned recommends both motions be

GRANTED. As discussed below, Inch is immune from liability, and even if he were not, Plaintiff has failed to exhaust his administrative remedies as to all Defendants.

I.  BACKGROUND

Plaintiff Jeffery Jones, an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Okaloosa Correctional Institution ("Okaloosa CI"), proceeding *pro se* and *in forma pauperis*, initiated this action in Florida State Court, asserting claims for cruel and unusual punishment in violation of the Eighth Amendment and for battery. Plaintiff sues the following six (6) defendants: (1) Mark Inch, the Secretary of the FDOC; (2) Warden Maiorana, the Warden of Blackwater River Correctional ("Blackwater River CI"); (3) Officer Scott, (4) Officer Overholt and (5) Officer Molesky, corrections officers at Blackwater River Correctional; and (6) Kevin Sidebottom, the Chief Executive Officer of The GEO Group. *Id.* at 1. Plaintiff sues Inch in his official capacity only, Sidebottom in both his induvial and official capacity, and the remaining Blackwater River officers in their individual capacities. *Id.*

The crux of Plaintiff's complaint involves an October 26, 2020 incident occurring at Blackwater River CI, in which Plaintiff's then cellmate, Kyle Pierre, began experiencing "a psychological emergency." ECF Doc. 1-1 at 2. The majority of Plaintiff's factual allegations relate to how Pierre was treated. As Defendants point out, however, Plaintiff does not have standing to bring claims on behalf of

Pierre. *See Franklin v. Garden State Life Ins.*, 462 F. App'x 928, 930 (11th Cir. 2012) (*per curiam*) ("the right to appear *pro se* . . . is limited to those parties conducting their own cases and does not apply to persons representing the interest of others") (internal citations quotation marks omitted). Thus, for purposes of this report and recommendation, only those allegations relating directly to conduct involving Plaintiff are relevant. Those allegations, which are assumed true for purposes of this report and recommendation, are as follows:

At approximately 8:30 p.m. on October 26, 2020, inmate Pierre began "experiencing mental disturbances" and went into fright mode, covering the cell window with a blanket. ECF Doc. 1-1 at 2. When inmate Pierre did not remove the blanket, Defendants Scott, Overholt, and Molesky, acting in unison and without warning, "open[ed] the food port (flap)," "pulled the blanket down," and sprayed an entire canister of chemical agents "inside the cell." *Id.* at 3. The "chemical agent[s] hit [Plaintiff] in [the] face" and his "unclothed body since [he] only had boxers on awaiting showering." *Id.* at 4. Plaintiff asserts these "[D]efendants [should have] remov[ed] [him] from the situation before" administering any management tools. *Id.*

Afterwards, Plaintiff was removed from the cell in hand restraints, given a decontamination shower, and "relocated [to] cell Y1-103." *Id.* Plaintiff asserts the Defendants' "relent[ess]" use of chemical agents caused his respiratory system, eyes,

skin, genitalia, and anal area to burn "for a few days" and that he suffers from paranoia, mental emotional distress, anguish, neurosis, resentment, and bitterness. ECF Doc. 4-5.

As to Defendants Inch, Warden Maiorana, and Sidebottom, Plaintiff alleges these Defendants "created a policy, practice, and custom of nonfeasance . . . by not doing anything to discourage mistreatment of mentally ill prisoners by subordinate employees." *Id.* at 3.

## II.   SECRETARY INCH'S MOTION TO DISMISS

Defendant Inch has moved to dismiss Plaintiff's complaint on the grounds that (1) he is entitled to sovereign immunity in his official capacity and, in the alternative, that (2) he cannot be individually liable under a theory of respondent superior. ECF Doc. 1-15. The undersigned agrees.

### A. LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). However, "[l]abels and

conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. *Id.* (quotations and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001) (quotations and citations omitted).

## B. DISCUSSION

As stated above, Plaintiff has sued Inch only in his official capacity. A suit against a state employee in his official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. *Gamble v. Florida Dept. of Health & Rehab. Services*, 779 F.2d 1509, 1512 (11th Cir. 1986). Absent an express waiver by the State or a valid congressional override, however, the Eleventh Amendment bars an action for monetary damages against an official or agency of the State of Florida in federal court. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("The Eleventh Amendment bars [suits against a State] unless the State has waived its immunity . . . .").

The State of Florida has not waived its sovereign immunity from §1983 suits and Congress has not abrogated Florida's sovereign immunity by other means. *See Gamble*, 779 F.2d at 1513-15 (holding "that Florida has not waived its Eleventh Amendment sovereign immunity"). Defendant Inch, therefore, is immune from

liability for Plaintiff's Eighth Amendment claims.[1] *Id.* (holding that the Eleventh Amendment "will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C.A. § 1983").

Even if Plaintiff were to amend his complaint to assert claims against Inch in his individual capacity, such a claim would nonetheless fail as a matter of law because they are based on allegations that relate to Plaintiff's cellmate, and not to Plaintiff. Namely, Plaintiff alleges Inch "created a policy, practice, and custom of nonfeasance . . . by not doing anything to discourage mistreatment of mentally ill prisoners by subordinate employees." ECF Doc. 1-1 at 3. The only allegation in Plaintiff's complaint regarding mentally ill prisoners is in his description of why Pierre called an emergency. There is no allegation that Plaintiff suffers from any mental illness and, thus, no allegation any such policy, practice or custom directly affects Plaintiff. Plaintiff does not have standing to seek relief based on how other inmates are treated. *See Hutchison v. United States*, No. 3:15-CV-890-J-34MCR, 2016 WL 7173886, at *3 (M.D. Fla. May 12, 2016), *report and recommendation adopted*, No. 3:15-CV-890-J-34MCR, 2016 WL 7157561 (M.D. Fla. Dec. 8, 2016) ("[Plaintiff] has no right to assert claims on behalf of other inmates.").

---

[1] To the extent there is an argument that Defendant Inch waived his defense of immunity by consenting to the removal of this action, this Circuit has routinely held that "a state can waive its forum immunity but retain other aspects of sovereign immunity, including immunity from liability for certain claims." *Stroud v. McIntosh*, 722 F.3d 1294, 1303 (11th Cir. 2013).

Accordingly, the undersigned recommends that Defendant Inch's motion to dismiss (ECF Doc. 1-15) be granted. Also, although Inch has not specifically moved to dismiss based on failure to exhaust, as discussed below, Plaintiff's failure to exhaust equally applies to his claims against Inch.

### III. DEFENDANTS MAIORANA, SCOTT, OVERHOLT, AND MOLESKY'S MOTION TO DISMISS

Defendants Maiorana, Scott, Overholt, and Molesky have moved to dismiss Plaintiff's complaint on the grounds that (1) Plaintiff did not properly exhaust his administrative remedies and, in the alternative, (2) Plaintiff has failed to state a claim on which relief can be granted. Because the undersigned finds that Plaintiff did not properly exhaust his administrative remedies according to the FDOC's grievance procedure, the undersigned need not address whether Plaintiff has failed to state a claim for relief against Defendants.

#### A. LEGAL STANDARD—FAILURE TO EXHAUST

The defense of failure to exhaust should be treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008). "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss or be treated as such if

raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

When deciding a motion to dismiss for failure to exhaust administrative remedies, the Court uses a two-step process. *Turner*, 541 F.3d at 1082. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's versions of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* It is the defendant's burden to prove "that the Plaintiff has failed to exhaust his available remedies." *Id.*

1. *Exhaustion Under the Prison Litigation Reform Act*

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-requisite to filing suit that federal courts "have no discretion to

waive." *Rich*, 530 F.3d at 1373. A court must dismiss an action if it is satisfied that an inmate failed to properly exhaust his available administrative remedies before filing suit. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

The process of having a prisoner exhaust his administrative remedies "gives an agency the opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at 95.

It is not enough for a plaintiff to simply exhaust his administrative remedies as the PLRA requires proper exhaustion. *Id.* at 94. "Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id.* While the grievance process may "vary from system to system and claim to claim . . . it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

The grievance procedure that must be followed is determined by the agency – here, the FDOC. *See Jones*, 549 U.S. at 218. The FDOC's grievance procedure generally requires an inmate to: (1) file an informal grievance with a designated

prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary.  *See* Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).

    2. *Plaintiff's Grievances*

On November 24, 2020, Plaintiff filed a formal grievance with the Warden, which was received on November 25, 2020 (185-2011-104). ECF Doc. 6-1 at 5.  It appears Plaintiff attempted to by-pass the informal grievance process by writing "EMERGENCY NATURE" on the top of the grievance, and stating that he feared being "housed in (Y-Dorm) among the officer[s] who violently attacked him." *Id.* Specifically, Plaintiff stated that when his "cell-mate "Pierre, Kyle [began] experiencing episodes of psychosis behavior[,] [he] requested to the officers . . . to cuff [him] up and remove [him] from the cell." *Id.* Plaintiff further complained that the officers "ignored [his] concern [and] proceed[ed] to . . . administer[r] chemical agent[s] inside the cell that hit [him] and that this "use of force was unnecessary and excessive." *Id.* As relief, Plaintiff sought to be transferred. *Id.*

On November 25, 2020, Warden Maiorana returned Plaintiff's formal grievance "without action" because Plaintiff's issue "was found not to be an emergency." *Id.* at 6.  The Warden advised Plaintiff that "[i]f [he was] within the

allowable time frames[,]" he could "resubmit [his] grievance[s] as [an informal] grievance at the appropriate level." *Id.*

Either before or at the same time Plaintiff submitted the November 24, 2020 formal grievance, Plaintiff also filed a second formal grievance with the Warden, also titled "EMERGENCY NATURE" and again seeking witness protection (185-2011-105). *Id.* at 24. Although Plaintiff states that "on October 26, 2020, a deliber[ate], malicious[,] and violent use of force was brought against [him] for no justifiable reason" the only relief he seeks is for witness protection from the staff members involved in the use of force incident. *Id.*

Just as with Plaintiff's other formal grievance, the Warden returned Plaintiff's grievance "without action" because Plaintiff's issue "was not found to be an emergency nature." *Id.* at 25. The Warden again informed Plaintiff that "if [he was] within the allowable time frames[, he could] resubmit [his] grievance as a regular grievance at the appropriate level." *Id.*

On December 2, 2020, Plaintiff re-submitted both of his formal grievances as informal grievances. *Id.* at 8, 10. As to Plaintiff's grievance regarding Defendants' alleged use of force (185-2012-0079), Plaintiff stated he was "resubmit[ting] per log No # 211-185-104" and claimed that he was "in fear of [his] life, safety and well-beings" if he continued to be "housed in (Y-Dorm) among the officers who violently attacked [him]." *Id.* at 8.

On December 11, 2020, the institution denied Plaintiff's grievance stating that "the fixed wing camera d[id] not support [his] allegations," but that he would be "placed on [protective management] status." *Id.* On December 14, 2020, the institution returned Plaintiff's request for witness protection (185-2012-0083) because the response to informal grievance 185-2012-0079 "already addressed the issue." *Id.* at 10.

Although Defendants contend Plaintiff's informal grievance regarding the alleged excessive use of force was untimely, Defendants acknowledge the institution responded to the grievance on the merits. Thus, Plaintiff satisfied the first step of the FDOC's exhaustion procedures. ECF Doc. 6 at 10. Plaintiff had fifteen (15) calendar days from the denial of the informal grievance to file a formal grievance with the Warden—step two of the grievance procedure. *See* Fla. Admin. Code Ann. r. 33-103.011 (1)(b). Plaintiff, however, did not file a formal grievance with the Warden. Instead, on January 4, 2021, *after* the 15-day deadline, Plaintiff filed two (2) appeals with the Office of the Secretary. ECF Doc. 6-1 at 11, 13.

On January 15, 2021, Plaintiff's appeals were "returned without action." *Id.* at 12, 14. Notably, Plaintiff "did not provide the office with a copy of the formal grievance filed at the institutional level" or "the reason [Plaintiff] provided for by-passing that level of the grievance procedure [was] not acceptable." *Id.* The Secretary advised Plaintiff that he had "15 days from the date this response was

mailed . . . to resubmit [his] grievance at [his] current location in compliance with Chapter 33-103, Inmate Grievance Procedure." *Id.* at 12,14.  Plaintiff, however, did not resubmit the grievance in compliance with Chapter 33-103. *See id.* at 2-4.

A grievance that is returned for failure to comply, such as Plaintiff's grievances, cannot serve as an exhaustion of administrative remedies. *See Newman v. Izuegbu*, 2016 WL 1598661, at *6 (N.D. Fla. Jan. 12, 2016) ("[a] grievance that is returned without action because the grievance was not in compliance with the grievance procedures is insufficient to show exhaustion of administrative remedies") (citing *Joseph v. Gorman*, 2012 WL 4089012, at *6 (N.D. Fla. Mar. 12, 2012) (noting that a response that returns the grievance without action or finding it to be noncompliant does not exhaust administrative remedies)); *Wallace v. Jones*, 2018 WL 4145929, at *3 (M.D. Fla. Aug. 30, 2018) ("[i]f a grievance is returned without action, the inmate has failed to 'properly' complete the grievance process") (citing *Bryant*, 530 F.3d at 1379).  Moreover, this Court cannot disregard the Secretary's determination that a grievance is non-compliant with FDOC procedures. *See Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (an "untimely grievance that is rejected as such by prison officials" "does not satisfy the exhaustion requirement of the PLRA"); *see also Mraz v. Pagan-Delgado*, 2018 WL 4326864, at *3 (N.D. Fla. Sept. 29, 2018) (a court may not disregard a timeliness bar that the Secretary's Office has decided to enforce).

Plaintiff does not dispute the grievances relied upon by Defendants are all the grievances he filed.  Although Plaintiff did not file a response to Defendants' motion, as he was directed by the Court to do, Plaintiff submitted his grievances to the state court in a March 29, 2021, "written response."  *See Jones v. Scott*, et al., 2021 CA 000148 at Doc. 34.[2]  The grievances submitted by Plaintiff are the same grievances discussed above, and relied upon by the Defendants.  Thus, under step one of the *Turner* analysis, the Court finds that Defendants are entitled to have the complaint dismissed.[3]  Specifically, by failing to file a formal grievance to the Warden as required in step two of the FDOC's procedures, Plaintiff has failed to exhaust his administrative remedies.

Also, although Plaintiff filed six (6) additional grievances during December 2020, those grievances are either unrelated to Plaintiff's excessive force claim or allege that officers, not named as Defendants, retaliated against him based on his excessive force grievances.[4]  ECF Doc. 16-1 at 17, 23.  Plaintiff's complaint does

---

[2] Because Plaintiff did not file his response with this Court, his response is not part of the Court's electronic docket.  The undersigned, therefore, has attached Plaintiff's response as an exhibit to her report and recommendation.

[3] Although no return of service has been filed for Defendant Sidebottom, the undersigned recommends that Plaintiff's claims against Defendant Sidebottom also be dismissed for failure to exhaust.  *See Escobar v. Crosby*, 363 F. Supp. 2d 1361, 1366 (S.D. Fla. 2005) (holding dismissal of prisoner's claims against unserved defendants was appropriate based on both the prisoner's failure to effect timely service under Federal Rule of Civil Procedure 4(m) and his failure to exhaust administrative remedies).

[4] Plaintiff also filed a grievance marked as "informal" to the Inspector General's Office on November 10, 2020 (185-2011-0065).  ECF Doc. 6-1 at 15.  This grievance sought "witness

not allege that any of the Defendants retaliated against him. Rather, Plaintiff claims the Defendants did not remove him from the cell "before *retaliating against Pierre*." ECF Doc. 1-1 at 3 (emphasis added). Thus, these grievances would not be sufficient to exhaust Plaintiff's excessive force claims against Defendants.

## IV. CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1. Defendant Inch's Motion to Dismiss (ECF Doc. 1-15) be GRANTED for failure to state a claim.

2. Defendants Maiorana, Scott, Overholt, and Molesky's Amended Motion to Dismiss (ECF Doc. 6) be GRANTED for Plaintiff's failure to properly exhaust his administrative remedies.

3. The Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.[5]

4. Plaintiff's complaint be DISMISSED as to all named Defendants, both served and unserved.

---

protection" based on the excessive use of force he witnessed on Pierre on October 26, 2020, and fails to mention or complain of any force being used on him. The institution denied the grievance.
[5] *See Barcena v. Dep't of Off-St. Parking of City of Miami*, 492 F. Supp. 2d 1343, 1358 (S.D. Fla. 2007) (declining to exercise supplemental jurisdiction over Plaintiff's state law claims because "Plaintiff's claims based on federal constitutional violations . . . fail as a matter of law").

5.      The clerk be directed to close this file.

Done at Pensacola, Florida, this 21st day of June, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days of the date of this report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**

Provided to Okaloosa Correctional Institution on 3-29-2021 for mailing, by /s/ Jeffery Jones

GWEN MARSHALL-KNIGHT
CLERK OF THE COURT AND COMPTROLLER
LEON COUNTY
301 SOUTH MONORE STREET #100
TALLAHASSEE, FLORIDA 32301

JEFFERY JONES #387744
  Plaintiff,

V.

A. SCOTT, et.al.
  Defendant

CASE NO.: 2021-CA-000148

## PLAINTIFF'S WRITTEN RESPONSE

Comes Now Plaintiff Jeffery Jones, pro se, Has Submitted To The Circuit Court Of The Second Judicial Circuit, In Leon County, Florida. The Filing of The Tort Claim, And Also Presented Exhibiting Evidence, Exhuasting All His Remedies On The Institutional And Tallahassee Level. The "TRUTH" And "PROOF" Is Sufficient To Hear Plaintiff's Claim.

FILED 2021 APR -1 AM 10:52 GWEN MARSHALL CLERK OF THE COMPTROLLER LEON COUNTY, FLORIDA

Date: 3-29-2021.

/s/ Jeffery Jones
/p/ JEFFERY JONES #387744
OKALOOSA CORR. INSTITUTION
3189 COLONEL GREG MALLOY ROAD
CRESTVIEW, FLORIDA 32539

JEFFERY JONES #387744
OKALOOSA CORRECTIONAL INSTITUTION
3189 COLONEL GREG MALLOY ROAD
CRESTVIEW FLORIDA 32539

PENSACOLA FL 325
30 MAR 2021 PM 2 L



MAILED FROM OKALOOSA
CORRECTIONAL INSTITUTION

LEGAL MAIL

OFFICE OF:
GWEN MARSHELL-KNIGHT
CLERK OF THE CIRCUIT COURT AND COMPTROLLER
LEON COUNTY
301 SOUTH MONROE STREET #100
TALLAHASSEE FLORIDA 32301

E12221
32301-180399